COMMONWEALTH vs. ROBERT CONNOLLY.

Middlesex.  December 4, 1984. — February 28, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Instructions to jury. *Motor Vehicle,* Operating under the influence. *Evidence,* Expert opinion.

At the trial of a complaint under G. L. c. 90, § 24, for operating an automobile while under the influence of intoxicating liquor, there was reversible error in the judge's charge to the jury that "[b]eing under the influence . . . means that a person . . . was influenced in some perceptible degree by the intake of alcoholic beverages," and in his example of a hypothetical case in which a person drinks liquor, drives, and as a result of the liquor suddenly feels "slightly lightheaded," "slightly depressed," or "slightly happier" than he otherwise would. [172-175]

A defendant charged with operating an automobile while under the influence of intoxicating liquor who had refused to take a breathalyzer test could not avail himself of the favorable presumptions of G. L. c. 90, § 24 (1) (*e*), on the basis solely of the opinion of an expert witness as to the defendant's blood alcohol level at the time in question. [175]

COMPLAINTS received and sworn to in the Cambridge Division of the District Court Department on May 16, 1983.

On appeal to the jury session of that court, the case was tried before *Arthur Sherman,* J.

*David C. Casey* for the defendant.

*Patricia A. McEvoy,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. This case requires us to define the phrase "while under the influence," as used in G. L. c. 90, § 24 (1) (*a*) (1), as appearing in St. 1982, c. 373, § 2, the law that prohibits operating a motor vehicle while under the influence of intoxicating liquor or other substances.

Robert Connolly was charged with operating a motor vehicle "while under the influence of intoxicating liquor." When arrested, he refused to take a breathalyzer test. After he was convicted at a bench trial, he claimed a de novo jury trial.

The police officer who arrested Connolly testified at the jury trial as follows. He stopped a car driven by Connolly for going through a red light. When he spoke to Connolly, he observed that Connolly's eyes were glassy and that his speech was slurred. The police officer asked Connolly to walk a straight line and to pick up a coin from the ground. When Connolly performed those tests, he observed that Connolly was unsteady on his feet, so he arrested him.

Connolly testified that in the eight hours before his arrest he had consumed three or four "beers."

The jury returned a guilty verdict, and the judge sentenced Connolly to serve thirty-two days in a house of correction on consecutive weekends. Connolly filed an appeal from the judgment and a motion to stay the sentence pending appeal. The judge denied Connolly's motion, and Connolly petitioned a single justice of the Appeals Court to stay the execution of his sentence pending appeal. The single justice stayed the execution of sentence, and the appeal was docketed in the Appeals Court. On our own motion, we transferred the case to this court.

Connolly argues that in his jury instructions the judge incorrectly explained the meaning of the words "under the influence of intoxicating liquor," as used in G. L. c. 90, § 24 (1) (*a*) (1). We agree, so we reverse the judgment and remand for a new trial.

Substantially following Instruction 5.10 of the Model Jury Instructions for Criminal Offenses Tried in the District Court Department (1980), the judge instructed the jury as follows:

"A person to be under the influence of intoxicating liquor does not have to be drunk. . . . Being under the influence . . . means that a person . . . was influenced in some perceptible degree by the intake of alcoholic beverages, no matter how great or how small the potion may be. And that's all it does mean. It does not mean that a person cannot drive an automobile and drive it skillfully and carefully, observing every rule of the road. A person driving an automobile on a public way while under the influence of intoxicating liquor violates, offends against the statutes, even though he drives so carefully, so skillfully so that the public is not annoyed or endangered."

The judge illustrated his instruction with an example:

"Visualize, if you will, last night when you went home, somebody made dinner or you made dinner for yourself. You had one, two or three drinks, whatever is your pleasure, if you do drink. And then someone announced, 'We don't have any milk in the house; would you go to the supermarket to get some milk.' The supermarket is eight blocks away in a small shopping center. You get into your car and after you've had the three or four drinks, or how many, or maybe one, it really doesn't matter, and you drive. And would you believe you stop at eight blocks at eight red lights? In fact, at one point you stop where there isn't even an intersection, there is a boy scout leading six little old ladies across the street whether they want to go or not. You drive into the parking lot of the shopping center and skillfully park your automobile between two cars in a very narrow space. You walk in, you buy a half gallon of milk, you pay with the proper change, you come out, skillfully back your car out of the parking space and go back whence you came, again stopping at all eight lights and again stopping for the boy scout who changed his mind and wants to take the women across the other way. Suddenly, suddenly as a result of the intake of the alcoholic beverage, you feel slightly lightheaded. Hypothetically you may feel slightly depressed; hypothetically you may feel slightly happier than is your norm at that time of the evening. If you feel any abnormality as a result of the intake of the alcoholic beverage, you are violating the statutes of the Commonwealth, by virtue of the fact that you're operating a motor vehicle, carefully, skillfully, observing every rule of the road, except you are presently feeling the ingestion of that alcohol, no matter how it may manifest itself.

"    . . . .

"The violation of this statute does not require proof that the liquor adversely affected the operation of the vehicle. . . . The statute says that the intake of alcohol must adversely affect the person, and it is the person who should not be driving the car."

The original statute providing for punishment for operating a motor vehicle "while under the influence of intoxicating liquor" was enacted in 1906. St. 1906, c. 412, § 4. That language survives in G. L. c. 90, § 24 (1) (*a*) (1). "The statute was passed for the protection of travellers upon highways . . . ." *Commonwealth* v. *Clarke*, 254 Mass. 566, 568 (1926). See also *Commonwealth* v. *Lyseth*, 250 Mass. 555, 558 (1925).

In *Commonwealth* v. *Lyseth, supra*, the defendant appealed from his conviction for operating while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24. He contended that the trial judge erroneously had refused to give a requested jury instruction that the defendant could not be found guilty unless he was actually driving in a manner different from the way he would have driven if he had not drunk liquor. This court rejected that contention, stating that "[t]he Commonwealth was not required to prove that the defendant was drunk," and that "[i]t was wholly immaterial whether the defendant exercised due care to avoid injury to other travellers." *Commonwealth* v. *Lyseth, supra* at 558.

Those principles retain their validity today. Therefore, in the present case the judge correctly instructed the jury that to be driving while under the influence of liquor a person need not be drunk. The judge also correctly stated that to obtain a conviction under G. L. c. 90, § 24, the Commonwealth need not prove the defendant actually drove unskillfully or carelessly, and that "[t]he statute says that the intake of alcohol must adversely affect the person."

However, the judge went too far when, following Model Instruction 5.10, he charged the jury that "[b]eing under the influence . . . means that a person . . . was influenced in some perceptible degree by the intake of alcoholic beverages," and he exacerbated that error when he explained his statement by hypothesizing a case in which a person drinks liquor, drives, and as a result of the liquor suddenly feels "slightly lightheaded," "slightly depressed," or "slightly happier" than that person would feel in the absence of liquor. Although the statutory language, read literally, would allow that interpretation, we must read it in light of the legislative purpose to protect the

public from drivers whose judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies are diminished because of the consumption of alcohol. Interpreting the statute in that light, we conclude that, in a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or erratic manner, but it must prove a diminished *capacity* to operate safely.

The legislative enactment of G. L. c. 90, § 24 (1) (*e*), inserted by St. 1961, c. 340, supports our definition. That section originally provided, in part: "In any prosecution for a violation of paragraph (1) (*a*) of this section, evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by chemical test or analysis of his blood or as indicated by chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor . . . . If such evidence is that such percentage was five one hundredths or less, there shall be a presumption that such defendant was not under the influence of intoxicating liquor; . . . and if such evidence is that such percentage was fifteen one hundredths or more, there shall be a presumption that such defendant was under the influence of intoxicating liquor." In 1972, the Legislature changed the word "fifteen" to "ten." St. 1972, c. 488, § 1. The presumptions contained in § 24 (1) (*e*) originated in 1939 reports published by the National Safety Council and the American Medical Association concerning the effect of alcohol on driving. See *Commonwealth* v. *Brooks*, 366 Mass. 423, 427 (1974). The legislative adoption of those presumptions, therefore, strengthens our conclusion that in G. L. c. 90, § 24, the Legislature has focused on impaired drivers, not on "slightly happier" or "slightly depressed" drivers.

The rule of strict construction of criminal statutes, see *Commonwealth* v. *Brown*, 391 Mass. 157, 159 (1984), also leads us

to conclude that the trial judge erroneously explained the words "while under the influence" to the jury. As we have stated above, the statute, construed literally, permits the interpretation given it by the judge. However, another fair interpretation of the statute would prohibit driving only if alcohol has affected the driver to such a degree that the driver threatens the public welfare. We must resolve in favor of criminal defendants any reasonable doubt as to the statute's meaning. *Commonwealth v. Gagnon*, 387 Mass. 567, 569, modified on other grounds, 387 Mass. 768 (1982).

Case law from other States lends overwhelming support to our definition. In construing statutes similar to G. L. c. 90, § 24, courts in thirty-two States have defined the words "under the influence." In thirty of those States the courts have related their definitions to the impairment of senses, judgment, and motor skills that makes driving after drinking alcohol dangerous.[1]

---

[1] Arizona, *Hasten v. State*, 35 Ariz. 427, 431 (1929); California, *People v. Haeussler*, 41 Cal.2d 252, 261-263 (1953); Colorado, *Snyder v. Denver*, 123 Colo. 222, 226 (1951); Connecticut, *Infeld v. Sullivan*, 151 Conn. 506, 509 (1964); Georgia, *Cargile v. State*, 244 Ga. 871, 873-874 (1979); Illinois, *People v. Seefeldt*, 112 Ill.App.3d 106, 108 (1983); Iowa, *State v. Davis*, 196 N.W.2d 885, 890 (1972); Kansas, *State v. Reeves*, 233 Kan. 702, 704 (1983); Louisiana, *State v. Hightower*, 238 La. 876, 886 (1959); Maine, *State v. Bryce*, 243 A.2d 726, 730 (1968); Maryland, *Alston v. Forsythe*, 226 Md. 121, 132 (1960); Michigan, *People v. Lambert*, 395 Mich. 296, 305 (1975); Minnesota, *State v. Graham*, 176 Minn. 164, 169 (1929); Nebraska, *State v. Tripple*, 190 Neb. 713, 715 (1973); New Hampshire, *State v. Slater*, 109 N.H. 279, 280 (1969); New Jersey, *State v. Johnson*, 42 N.J. 146, 165 (1964); New Mexico, *State v. Deming*, 66 N.M. 175, 180 (1959); North Carolina, *State v. Carroll*, 226 N.C. 237, 239-240 (1946); North Dakota, *State v. Salhus*, 220 N.W.2d 852, 856 (1974); Ohio, *State v. Hardy*, 28 Ohio St. 2d 89, 90-91 (1971); Oklahoma, *Stanfield v. State*, 576 P.2d 772, 774 (1978); Oregon, *State v. Robinson*, 235 Or. 524, 529-531 (1963); Pennsylvania, *Commonwealth v. Horn*, 395 Pa. 585, 590-591 (1959); Rhode Island, *State v. Weeden*, 94 R.I. 1, 2-3 (1962); South Carolina, *State v. Sheppard*, 248 S.C. 464, 466 (1966); South Dakota, *State v. Masteller*, 86 S.D. 514, 516-518 (1972); Tennessee, *Bostwick v. State*, 154 Tenn. 1, 5-6 (1926); Texas, *Grooms v. State*, 156 Tex. Crim. 504, 506 (1951), and *Sumner v. State*, 164 Tex. Crim. 262, 263 (1956); Washington, *State v. Hurd*, 5 Wash. 2d 308, 313-316 (1940); Wisconsin, *Waukesha v. Godfrey*, 41 Wis. 2d 401, 405-407 (1969).

Only in Vermont and Virginia have the courts refused to make that link.[2]

Because we hold that the harmful error in the judge's charge entitles Connolly to a new trial, we need not review the other issues that he raises. We briefly discuss one such issue, however, because it may recur at retrial. Connolly sought to introduce in evidence a "forensic chemist's" opinion of the "blood alcohol level" that a person Connolly's size would have after consuming three or four "beers" in five or six hours, and his opinion as to the effect of that amount of alcohol on the person. The judge excluded the evidence.

It may be that Connolly can present a qualified expert to testify, in response to an appropriate hypothetical question, about the probable effect that the consumption of a specified amount of alcohol in a specified time period would have on Connolly's ability to operate a motor vehicle safely. We note only that opinion evidence as to Connolly's blood alcohol level, without further admissible evidence that explains the significance of that measurement, would be irrelevant. A defendant cannot withhold his consent to chemical tests or analyses of his blood or breath and then at trial reap a benefit from the presumptions of G. L. c. 90, § 24 (1) (*e*). The statutory presumptions apply to chemical tests or analyses, not to the opinions of expert witnesses.

The judgment on the complaint charging the defendant with driving while under the influence of intoxicating liquor is reversed, the verdict is set aside, and the case is remanded to the jury-of-six session of the District Court for a new trial consistent with this opinion.

*So ordered.*

---

[2] *State* v. *Storrs*, 105 Vt. 180 (1933), reaffirmed in *State* v. *Wall*, 137 Vt. 482, 487 (1979). *Owens* v. *Commonwealth*, 147 Va. 624 (1927).