COMMONWEALTH *vs.* TIMOTHY P. MARLEY.

Middlesex.   September 11, 1985. — December 19, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Blood alcohol test, Intoxication, Right to obtain evidence.

It was error requiring reversal of a conviction for operating a motor vehicle on a public way while under the influence of intoxicating liquor, for the judge to fail to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished his capacity to operate a motor vehicle safely. [436-438]

Delay by police of approximately two and one-half hours before administering a blood alcohol test to an arrested person was not unreasonable in view of the person's need for immediate treatment at a hospital following a motor vehicle accident, and the results of the test were properly admitted in evidence. [438-439]

At the trial of a complaint for operating a motor vehicle on a public way while under the influence of intoxicating liquor, there was no scientific evidence which would have entitled the defendant to a jury instruction that delay by police in administering a blood alcohol test might be considered as affecting the results of the test and, in any event, the judge's instruction to the jury on the scientific accuracy of the test was adequate to meet the defendant's objection based on such delay. [439-440]

A defendant who was booked at a police station on a charge of operating a motor vehicle on a public way while under the influence of intoxicating liquor and who was thereupon informed, in compliance with G.L. c. 263, § 5A, of his right to be examined by a physician of his own choice was not entitled to a dismissal of the charge by reason of the failure of the police officer who had taken him to a hospital for treatment, approximately two and one-half hours earlier, to inform him of this right while at the hospital. [440-441] LIACOS, J., would hold that, although police conduct had violated the defendant's right under G.L. c. 263, § 5A, the nonmedical evidence of guilt was sufficiently strong that dismissal of the complaint was not required, and that the trial judge should be directed to consider a motion to suppress the medical evidence obtained by police. [443-445]

At the trial of a criminal complaint in a District Court, there was no error in allowing an assistant district attorney to testify to an admission which

he had heard the defendant make during his previous trial, which had ended in a mistrial, nor in admitting this witness's testimony before the defendant himself had testified. [441]

At the trial of a complaint for operating a motor vehicle on a public way while under the influence of intoxicating liquor, the evidenc, including the observations of a police officer who had been dispatched to an accident scene, and the results of a blood alcohol test, was sufficient to warrant denial of the defendant's motion for a required finding of a not guilty. [441-442]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on December 23, 1983.

On appeal to the jury session, the case was tried before *Anthony N. Compagnone, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph F. Annunziata, Jr.,* for the defendant.

*Emily J. Gould,* Assistant District Attorney (*Pamela Hunt,* Assistant District Attorney, with her) for the Commonwealth.

NOLAN, J. The defendant was convicted in the Framingham Division of the District Court of operating a motor vehicle on a public way while under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24 (1) (*a*) (1) (1984 ed.). He was sentenced to six months in a house of correction, two years suspended, and fourteen days in an alcohol treatment program. He was also fined. The defendant exercised his right to a "de novo" jury trial which ended in a mistrial. Prior to the second jury trial, the defendant filed a motion to exclude the results of a breathalyzer test based upon the fact that the test was administered between two and one-half and four hours after the defendant's operation of the vehicle. He also filed a motion to dismiss the complaint, contending that the police failed to advise him in a timely fashion of his right to have an independent physical examination by a physician of his choice pursuant to G. L. c. 263, § 5A (1984 ed.). Both motions were denied. The jury returned a guilty verdict. The judge sentenced the defendant to six months, two months to be served, and the balance suspended for two years under the condition that the

defendant spend fourteen days in an alcohol treatment program. In addition, the judge directed the defendant to surrender his license and reimposed the fine.

The defendant asserts several grounds for reversal. His principal allegation is that the trial judge erred in failing to instruct the jury according to our recently decided case of *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985), or in language similar to the instructions we recommended in *Connolly. Id.* The defendant contends that Connolly should be applied retrospectively.

We conclude that a reversal is warranted because of the judge's failure to instruct the jury properly on the element of operating under the influence of intoxicating liquor, according to G. L. c. 90, § 24 (1984 ed.). We reach our conclusion for reasons other than those offered by the defendant. Because we reverse the conviction and remand for a new trial, we shall address only those issues that may recur at the new trial. We summarize the testimony.

On December 22, 1983, the defendant attended a Boston Bruins hockey game with four other persons. On the way to the game, the defendant stopped at a package store and one friend bought two six-packs of beer. The defendant had nothing to drink until he arrived at the Boston Garden. There he consumed one beer in the parking lot at or around 7 P.M. The defendant drank two more beers during the game at approximately 8:15 and 9:30 P.M. He and the others left the game at 10:30 P.M. and went to a bar where they remained until "close to" midnight playing pool. The defendant had another beer, and then had nothing further to drink after leaving the bar. The defendant drove one friend home. He experienced engine trouble and the group stayed at this friend's house for about one hour. The defendant then drove two other persons home at about 1:30 A.M.

Sergeant Robert Horrigan of the Holliston police department was dispatched to an accident scene at approximately 4:30 A.M. on Prospect Street in Holliston.[1] He observed an au-

---

[1] The defendant testified that the road was icy that morning. The sergeant stated that the road had been recently sanded.

tomobile against a telephone pole and the defendant standing outside the vehicle near the passenger door. A passenger inside was semi-conscious and bleeding from the neck. An ambulance soon arrived and transported the passenger to the hospital. The officer then asked for the defendant's license and registration. He noticed that the defendant's eyes were glassy and bloodshot and that his breath smelled of intoxicating liquor. He asked the defendant to perform a field sobriety test, which he failed twice. The officer noticed cuts on the defendant's face, and he decided to take the defendant to the hospital. On the way to the hospital, they stopped at the police station for about five minutes because the sergeant wanted to "make sure the town was covered since there were only two police officers at the time" on duty.

At the hospital, the defendant was treated by a physician for approximately twenty minutes. Shortly thereafter, Sergeant Horrigan entered the treatment room and gave Miranda warnings to the defendant.[2] As the defendant and the officer were leaving to return to the police station, the defendant complained of an injury to his hand. After an x-ray was taken, the defendant was informed that his hand was not injured. Upon arrival at the police station at or about 6:45 A.M., the defendant was formally booked for the offense of driving while under the influence of intoxicating liquor. He was given a breathalyzer test at 7:05 A.M., which yielded a reading of .15 per cent blood alcohol content. At this time, the defendant was informed of his right under G. L. c. 263, § 5A (1984 ed.), to have an independent physical examination by a physician of his choice.

1. *Jury instructions on the element of operating under the influence.* In *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985), we interpreted the phrase "while under the influence" as used in G. L. c. 90, § 24 (1) (a). In that case, we concluded that "in a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must

---

[2] Sergeant Horrigan testified that he had first formed an opinion that the defendant was under the influence of alcohol at this time. The defendant asked the officer if he were under arrest and the officer answered in the affirmative. The time was approximately 5:30 A.M.

prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or erratic manner, but it must prove a diminished *capacity* to operate safely" (emphasis in original). *Id. Connolly* did not announce any new legal principles but merely clarified the meaning of "operating under the influence" under G. L. c. 90, § 24. Under these circumstances, it is not necessary to engage in an analysis of the retroactivity of *Connolly.* See *Commonwealth* v. *Breese,* 389 Mass. 540, 541-542 (1983). Cf. *Solem* v. *Stumes,* 465 U.S. 638 (1984) (analysis of retroactivity necessary where Court announces a new constitutional principle); *Commonwealth* v. *Paszko,* 391 Mass. 164, 180 (1984) (retroactivity analysis triggered by question whether to apply "humane practice" rule to admissions as well as to confessions); *Commonwealth* v. *Breese, supra* at 541 (discussion of retroactivity of rule that judge must instruct jury that they are permitted to consider defendant's intoxication on element of extreme atrocity or cruelty for first degree murder cases); *Commonwealth* v. *Day,* 387 Mass. 915, 921 n.10 (1983) (rule that reasonable doubt standard applies to knowing and voluntary Miranda waivers applied prospectively only).

In the present case, the judge's charge on the element of "operating under the influence" was erroneous. In particular, he stated, "Being under the influence means that the Defendant at the time was influenced in some perceptible, some noticeable, degree by the intoxicating liquor that he had taken, and that's about all it does mean. It doesn't mean that he could not drive his car and drive it safely." The judge went on to state that "[s]uch a violation does not require proof that liquor adversely influenced or affected the operation of the vehicle. If you find that the Defendant operated the vehicle at a time when he was perceptibly affected by intoxicating liquor, regardless of the effects of such liquor on his operation, then you should find him guilty of the offenses charged in the complaint." As we held in *Connolly,* this type of charge fails to convey the true meaning of "operating under the influence" as

compelled by G. L. c. 90, § 24. The judge should have instructed the jury to inquire whether the defendant's consumption of alcohol diminished his capacity to operate a motor vehicle safely. We rule that it was reversible error not to have done so.

2. *Evidence of the breathalyzer test results.* The defendant testified that he had not consumed any alcohol after approximately 11:15 P.M. The breathalyzer test was administered at 7:05 A.M. The defendant contends that due to this time lapse the test did not render an accurate account of his blood alcohol content at the time he allegedly was operating the vehicle. Thus, the jury were left to surmise what the actual blood alcohol content was at that time.

Generally, a delay in time works to the defendant's advantage.[3] See *State* v. *Gallant,* 108 N.H. 72, 74 (1967). Moreover, delays between an accident or time of arrest and the testing for blood alcohol content generally goes to the weight of the evidence and not to its admissibility. *Commonwealth* v. *Arizini,* 277 Pa. Super. 27 (1980). Here, the time delay was reasonable and warranted in the circumstances. The police were dispatched to the accident scene at approximately 4:30 A.M.[4] The officer noticed cuts on the defendant's face and transported him to

---

[3] In recent years there has been some discussion that a blood alcohol level may increase for a period of time after the last point of ingestion of alcohol due to the length of time it may take the alcohol to enter the bloodstream. See Fitzgerald & Hume, The Single Chemical Test for Intoxication: A Challenge to Admissibility, 66 Mass. L. Rev. 23 (1981). Murphy, Constitutional Bases for a Right of Access to Counsel at the Pre-trial Stages of Drunk Driving Prosecutions: A Study in Conflicting Rights, 4 N. Ill. U. L. Rev. 203, 244 n. 143 (1984). However, the record reflects that the defendant failed to offer at trial or at the hearing on the motion to suppress any scientific evidence to substantiate his position. Cf. *Commonwealth* v. *Neal,* 392 Mass. 1, 14-21 (1984). The defendant asks us to determine that a test administered as long as seven hours after the last drink was ingested would produce a higher reading for blood alcohol content than if the test had been given two and one-half to four hours earlier. In the absence of any scientific evidence to substantiate this contention we decline to consider it.

[4] The defendant testified that the accident occurred around 3:15 A.M. The record reflects that the defendant could not account for all of his time spent between 2 A.M. and 4:30 A.M.

the hospital for treatment. The officer stopped at the police station along the way for five to ten minutes to make sure that his responsibilities were covered. After a doctor initially treated the lacerations on the defendant's face, the defendant then complained that his hand was injured. A second examination and X-ray was required which took more time. The officer then brought the defendant back to the station at approximately 6:30 A.M. After the initial booking procedures, the defendant was given a breathalyzer test at 7:05 A.M. We think that the delay was not unreasonable. Further, if the time lapse had any effect on the test results, it most likely would have worked in the defendant's favor.

3. *Jury instructions on the delay of time between the time of event and the breathalyzer test.* The judge did not commit error in denying the defendant's request for an instruction that the time delay may be considered with respect to its effect on the chemical test results.[5] The defendant offered no scientific evidence to support his contention. The defendant is therefore not entitled to an instruction without some evidence that the time delay could have adversely effected the breathalyzer test results. See *Commonwealth* v. *Neal,* 392 Mass. 1 (1984). We held in *Neal, supra* at 20 n.20, that the defendant does not have the burden of proving that the test results are inadmissible. Further, where he presents evidence to rebut the commonly accepted opinion that the scientific instrument is reliable, then the burden is on the Commonwealth to establish its admissibility. Moreover, defense counsel was allowed to cross-examine the officer who administered the test[6] on the issue of the delay of time, and he argued the point extensively to the jury.

[5] The defendant submitted the following request to the judge. "If you entertain a reasonable doubt as to the accuracy of the chemical test results, either because it was administered four hours after the accident or was not properly or competently administered, or because it was not scientifically accurate; or because you believe the inference suggested by the test results is outweighed by other competent evidence, then you should disregard the test and find the defendant innocent or guilty based on other evidence presented in this case," citing *Commonwealth* v. *Moreira,* 385 Mass. 792 (1982).

[6] We note that the defendant does not challenge the actual testing methods used by the officer who administered the breathalyzer test. Nor does the

Finally, the judge did include in his charge an instruction with respect to the scientific accuracy of the breathalyzer machine[7] that adequately met any objections raised by the defendant.

4. *The defendant's motion to dismiss for failure to comply with G. L. c. 263, § 5A.* The defendant argues that the police should have advised him of his right "to be examined immediately by a physician selected by him" at the hospital pursuant to G. L. c. 263, § 5A.[8] Section 5A is not a model of clarity in describing a person's rights. After providing that a person who is held "in custody at a police station or *other place of detention*" and who is charged with operating a motor vehicle while under the influence of intoxicating liquor" has the right, "at his request and at his expense" to be examined by a physician of his choice, it then requires the police officer in charge of such station or place of detention or his designee to inform the arrested person of this right *"immediately upon being booked"* (emphasis added). Finally, § 5A provides that a copy of that section shall be given the arrested person (unless a copy is prominently displayed in the police station or other place of detention) *"immediately upon being booked"* (emphasis

---

defendant claim that he failed to give his consent to the test or that his constitutional rights were violated while he was in custody. See generally Murphy, *supra* at 203, 269.

[7] "If you are convinced beyond a reasonable doubt that the test administered to the Defendant is scientifically accurate and was properly and competently administered, then you may consider the test result in determining the Defendant's guilt or innocence. If you believe the test is inaccurate, either because it is scientifically invalid and was not properly or competently administered, then you should disregard the test and find the Defendant innocent or guilty based on the other evidence presented in this case."

[8] General Laws c. 263, § 5A (1984 ed.), states: "A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it. Such person shall, immediately upon being booked, be given a copy of this section unless such a copy is posted in the police station or other place of detention in a conspicuous place to which such person has access."

added). The defendant concedes that he was informed of his rights under § 5A upon being booked. It may be argued that to this defendant the hospital was a "place of detention" because the police officer admittedly considered him under arrest at the time of the hospital visit. However, he had not been booked at this time and § 5A requires the police *to inform* him of his right to be examined at the time of booking. Parsing the statute in this way renders the conduct of the police in this case conformable to the statute. Cf. *Commonwealth* v. *Andrade,* 389 Mass. 874, 882 (1983).[9]

5. *Testimony of assistant district attorney.* The defendant testified in his first jury trial.[10] Consequently, any admissions that he made in the first trial were admissible in the second trial. An assistant district attorney who was present at the first trial heard the defendant admit to driving into the pole. It was not error to allow this witness to testify to such matters. It was open to the defendant to attack the credibility of the assistant district attorney on the issue of bias. The record reflects that he did so. We also reject the defendant's contention that it was error to have allowed the defendant's earlier testimony prior to the defendant's taking the stand. Because of the inherent reliability of admissions, they are generally considered to fall outside the strictures of the hearsay rule. See generally P.J. Liacos, Massachusetts Evidence 276 (5th ed. 1981). The evidence was relevant to the Commonwealth's case on the element of operation. It was, therefore, admissible.

6. *Motion for required finding of not guilty.* We affirm the denial of the motion for a required finding of not guilty. "The standard which we apply in reviewing the propriety of the denial of a motion for a required finding of not guilty is 'whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt.'" *Common-*

---

[9] In all, it would have been better practice to inform the defendant of this right at the hospital, but no prejudice resulted to the defendant.

[10] The first jury trial ended in a mistrial because the jury failed to reach a unanimous verdict.

*wealth* v. *Amado,* 387 Mass. 179, 186 (1982), quoting *Commonwealth* v. *Basch,* 386 Mass. 620, 622 (1982).

We consider the evidence at the close of the Commonwealth's case and at the close of all the evidence to determine whether the motion should have been granted. See *Commonwealth* v. *Sheline,* 391 Mass. 279, 283 (1984). There was evidence that a police officer was dispatched to an accident scene. "[W]hile not strongly probative, this fact [an accident] is corroborative of the other evidence of driving while intoxicated; it is not as if the police simply stopped [defendant] while he was driving along safely and came to their conclusion based on an odor of alcohol." *Commonwealth* v. *Funk,* 254 Pa. Super. 233, 238 (1978). Further, the officer noticed[11] that the defendant had glassy and bloodshot eyes, and that his breath smelled of alcohol. Finally, the defendant failed the field sobriety tests, and the breathalyzer test resulted in a score of blood alcohol content of .15 per cent. See *Commonwealth* v. *Moreira,* 385 Mass. 792, 795 (1982) ("a verdict of not guilty cannot be directed against the Commonwealth if the only evidence introduced is a positive breathalyzer test"). Evidence of the element of "operation" was introduced by the prosecutor and the parties stipulated that the road was a public way. This evidence combined was sufficient to warrant a denial of the motion for a required finding of not guilty. Moreover, the defendant's testimony in his case-in-chief did not cause the Commonwealth's case "to deteriorate" in any way. See *Commonwealth* v. *Sheline, supra* at 283.

We reverse the judgment, set aside the verdict, and remand the case to the jury-of-six-session for a new trial, consistent with this opinion.

*So ordered.*

---

[11] The defendant emphasizes the fact that Sergeant Horrigan had not formed an opinion as to the defendant's sobriety until he gave the defendant Miranda warnings at the hospital, and argues therefore that the sergeant entertained a reasonable doubt with respect to the defendant's condition at the time of operation. An arrest need not be based on an officer's convictions beyond a reasonable doubt. The standard is probable cause to believe a person has operated a motor vehicle while under the influence. G. L. c. 90, § 21 (1984 ed.). We think it was met here.

LIACOS, J. (concurring). I agree with the court's conclusion that the conviction must be reversed, the verdict set aside, and the case remanded for a new trial due to the failure of the trial judge properly to instruct the jury. I write this separate opinion to comment on the defendant's claim that his statutory rights under G.L. c. 263, § 5A, (1984 ed.), were violated. I cannot agree with the court's analysis, nor with its conclusion that there was no violation of the defendant's rights under that statute. Consequently, I cannot join in section 4 of the court's opinion.

The court parses the statute so as to render the conduct of the police conformable to the statute. I believe parsing the statute in this fashion subverts the statutory purpose and renders meaningless the right granted by the Legislature. The defendant has an absolute right to be examined by a physician. *Commonwealth* v. *Neal,* 392 Mass. 1, 8 n.7 (1984). The obvious reason for examination by a physician of the defendant's choice is to provide an opportunity for the defendant to obtain his own evidence on the question of his intoxication.[1] The court's decision in *Commonwealth* v. *Andrade,* 389 Mass. 874, 881 (1983), recognized that G.L. c. 263, § 5A, "creates a right to obtain evidence that is available for only a short period of time and also seeks to protect this right by requiring that the defendant be informed of its existence." It is the transient nature of the evidence that makes necessary the requirement that the defendant's right is "to be examined *immediately*" (emphasis added). G.L. c. 263, § 5A. The Legislature could not have intended the absurd result that the defendant be informed of his right after its exercise would be futile.[2]

---

[1] The defendant does not raise due process objections to his inability to challenge the Commonwealth's evidence. Cf. *Commonwealth* v. *Neal, supra* at 8 (due process requirement of an opportunity to challenge the accuracy of breathalyzer result discharged by statutory right to obtain independent test).

[2] The court's treatment of the statute also violates the axiom of statutory interpretation that "a statute must be read as a whole and consistently with the legislative intent." *Commonwealth* v. *Adams,* 389 Mass. 265, 273 (1983).

The court places great reliance on the language of the statute providing for notice of his rights to the defendant when he is "booked." To resolve the ambiguity between the defendant's right to be examined by his own physician "immediately" and the obligation of the police official to inform him of the right "immediately upon being booked," the court simply uncouples the two sentences. An understanding of the legislative intent requires an appreciation of the objective of the Legislature. *Duggan* v. *Bay State St. Ry.*, 230 Mass. 370, 374 (1918).[3] As *Commonwealth* v. *Andrade, supra,* makes clear, time is crucial in gathering evidence of intoxication.[4] Surely, delays, intentional or not, in informing arrested suspects of their statutory rights to have their own physicians gather transient evidence defeat the opportunity of a defendant to gather evidence which might rebut the evidence of the police.

The circumstances involved in the arrest and custody of a person charged with driving under the influence of intoxicating liquor should be considered in applying the statute. I recognize that the court has stated that the police officers need not "assist" a suspect in obtaining an examination. See *Commonwealth* v. *Alano,* 388 Mass. 871, 879 (1983). Once a suspect has been detained, however, the police officers must afford him a reasonable opportunity to exercise his right. The circumstances of each arrest will determine what is reasonable. See *Alano, supra* at 879-880 ("reasonable opportunity" varies according to circumstances, suggesting that unusual factors may require different actions by police); *Commonwealth* v. *Atencio,* 12 Mass.

---

[3] "It is a principle of general scope that a statute must be interpreted according to the intent of the makers, to be acertained from its several parts and all its words construed by the ordinary and approved usage of the language, unless they have acquired a peculiar meaning in the law, considered in connection with the cause of its enactment, the subject matter to which it applies, the pre-existing state of the common and statutory law, the mischief or imperfection to be remedied, and the main object to be accomplished, to the end that it be given an effect in harmony with common sense and sound reason." *Id.*

[4] See 1960 Ann. Survey Mass. Law § 11.5, at 115-117, for a discussion of the inherent problems involved in linking the obligation of providing notice of the defendant's right to the time of his booking.

App. Ct. 747, 750 (1981) (court considered entire circumstances to determine reasonableness of police conduct).

Application of a standard of "reasonableness" would eliminate cases with the ludicrous result we find here. This defendant was held in custody by a police officer for nearly two hours in the hospital, but was not informed of his right to have an examination by a physician of his choice until he had been removed to the police station. Clearly, a hospital is the kind of place where the defendant's right to have such an examination could be exercised effectively. The police officer, by not there advising the defendant of his right under § 5A, made a mockery of the expressed legislative intent. In this circumstance, both the "reasonable opportunity" and the legislatively-mandated timely notification were defeated. The court should not close its eyes to the realities of this situation. In my view, the right of the defendant to an immediate medical examination effectively was defeated.

The defendant's right under G.L. c. 263, § 5A, was violated. The court has not yet determined the appropriate remedy for such a violation. See *Andrade, supra* at 876-877 & 881 n.2 (dismissal of complaint appropriate absent overwhelming evidence of guilt; question whether suppression of prosecution breathalyzer evidence would be appropriate remedy not decided). Dismissal of the complaint is the appropriate remedy absent overwhelming evidence of guilt. The court has determined on other grounds that this case must be remanded for a new trial. In my view, the other evidence of guilt was sufficiently strong so as not to require dismissal of the complaint. In my view, however, the trial judge should consider a motion to suppress the medical evidence obtained by the police officers, including the breathalyzer evidence, as *Commonwealth v. Andrade, supra* at 881-882, suggests.