COMMONWEALTH *vs.* DONALD GAMMON.

Middlesex. June 11, 1985. — April 4, 1986.

Present: ARMSTRONG, DREBEN, & SMITH, JJ.

*Motor Vehicle,* Citation for violation of motor vehicle law, Operating under the influence. *Practice, Criminal,* Citation for violation of motor vehicle law, Instructions to jury.

At a trial of indictments charging the defendant with certain motor vehicle violations, including operating a motor vehicle while under the influence of intoxicating liquor, the judge erred in concluding that the police had violated G. L. c. 90C, § 2, by failing to issue a citation for the defendant's operation of the vehicle under the influence of intoxicating liquor until twenty-six days after the violation had occurred, where additional time was reasonably necessary for the police to determine the nature of that violation. [7-8]

It was error requiring reversal of a conviction for operating a motor vehicle while under the influence of intoxicating liquor for the judge to fail to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol had diminished his capacity to operate a motor vehicle safely. [8-9]

INDICTMENT found and returned in the Superior Court Department on April 19, 1983.

A motion to dismiss was heard by *Robert S. Prince,* J., and the case was tried before *Hiller B. Zobel,* J.

*Max D. Stern* for the defendant.

*Ellis M. Enlow,* Assistant District Attorney, for the Commonwealth.

SMITH, J. As a result of a motor vehicle accident on September 17, 1982, the defendant was indicted for vehicular homicide (G. L. c. 90, § 24G[*a*]), operating a motor vehicle negligently so that the lives and safety of the public might be endangered (G. L. c. 90, § 24[2][*a*]), and operating a motor vehicle while under the influence of intoxicating liquor (G. L. c. 90, § 24[1]). Following a jury trial on all of the indictments, the defendant was convicted only on the indictment that charged him with operating a motor vehicle while under the influence of intoxicating liquor. As a consequence, this appeal concerns only that indictment. The defendant argues two issues — that the judge erred in not allowing his motion to dismiss the indictment and that he improperly instructed the jury on the definition of "while under the influence" (G. L. c. 90, § 24(1)(*a*), as appearing in St. 1982, c. 373, § 2).[1]

1. *Denial of dismissal motion.* Prior to trial, the defendant filed a motion to dismiss the indictments on the sole ground that the Commonwealth had destroyed potentially exculpatory evidence by failing to take steps to preserve a blood sample taken from the defendant. After listening to the evidence produced at the hearing on the motion, the judge raised the question whether the police had issued a citation in a timely manner as required by G. L. c. 90C, § 2, on the operating under the influence indictment. At the judge's request counsel for both sides submitted briefs on the issue.

In a lengthy memorandum that contained his findings of fact and rulings of law, the judge ruled that the police had indeed violated G. L. c. 90C, § 2, by not timely issuing a citation to the defendant as required by the statute. He denied the defendant's motion to dismiss the indictment, however, on the ground

[1] This case was argued before us on June 11, 1985. Shortly before argument we learned for the first time that the Supreme Judicial Court had on its docket for argument a case that appeared to contain some of the same issues presented by this matter. That case, *Commonwealth* v. *Marley,* 396 Mass. 433 (1985), was argued before that court on September 11, 1985. The opinion was issued on December 19, 1985. We delayed the determination of this case until after that date.

that the defendant did not show that he was prejudiced by the violation. The defendant argues that the statute requires dismissal without a showing of prejudice if there is a finding that the citation was not issued in a timely manner. The Commonwealth agrees with the judge's decision to deny the defendant's motion to dismiss the indictment but urges us to reverse the judge's ruling that the police violated G. L. c. 90C, § 2, by not timely issuing the citation.[2]

General Laws c. 90C, § 2, as amended by St. 1968, c. 725, § .2, requires an officer assigned to traffic duty to record motor vehicle violations "upon a citation . . . as soon as possible and as completely as possible" thereafter. It provides further that a "failure to give the original of the citation to the offender at the time and place of the violation shall constitute a defense in any trial for such offense, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the offender or where the court finds that some circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure." In that event, "the automobile law violation shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator . . . ." A reading of the statute discloses that its most important feature is the requirement that the police issue a citation to the violator at the time and place of the violation. The Legislature, however, tempered that requirement by permitting certain exceptions to allow delay of the issuance

---

[2] The Commonwealth could not appeal from the judge's denial of the defendant's motion to dismiss the indictment. The absence of an appeal, however, does not foreclose us from considering the Commonwealth's claim that the judge erred in finding a violation of the statute. "[A] party may support a claim or judgment allowed below by urging the validity of a theory or an argument rejected by the lower court as a basis for its decision." *Commonwealth* v. *Gustafsson*, 370 Mass. 181, 186 (1976). Here, the Commonwealth does not attack the judge's decision on the dismissal motion but seeks to sustain it on the theory rejected by the judge, namely, that there had not been any violation of the statute. We also note that both parties have briefed the question whether there was a violation of the statute.

of the citation. See *Commonwealth* v. *Marchand,* 18 Mass. App. Ct. 932, 933 (1984) ("Delays in the delivery of the citation have been countenanced under the statute's safety valve, on records showing that 'additional time was reasonably necessary to determine the nature of the violation' or for other extenuating circumstances").

We summarize the facts from which the judge found a violation of G. L. c. 90C, § 2. On September 17, 1982, at approximately 2:00 A.M., two motor vehicles were involved in a head-on collision on Route 93 in Woburn. When the police arrived at the scene, they found the two automobiles stopped in the northbound lane, the defendant's automobile facing north in the direction of traffic, the other vehicle facing south into oncoming traffic. A passenger in that vehicle was rushed to a hospital, where he subsequently died. As a result of their preliminary investigation at the scene, the police concluded that the other vehicle was being driven the wrong way in the northbound lane. They notified the operator of the other vehicle that he would be subject to charges as the person responsible for the accident.

The defendant was taken to a local hospital. He was semiconscious. The doctor and nurse in the emergency room both noted that the defendant had slurred speech and smelled of alcohol. Because the defendant exhibited slight disorientation and disorganized thought and had some difficulty in expressing himself, the doctor ordered a blood test to be taken so that he could evaluate whether the defendant's condition was attributable more to alcohol intoxication than to a severe concussion. The test revealed a high blood alcohol level.[3]

Shortly after the blood test, two police officers arrived at the hospital to interview the defendant. They told him that the passenger in the other automobile had died. When the defendant became upset at the news, the police discontinued their efforts to talk with him and left the hospital. The officers did not make any observations that the defendant had been drinking or

---

[3] The test, which was performed on the serum portion of the blood, produced a reading of 290 mg. per deciliter. The equivalent percentage by weight of alcohol in whole blood would be approximately .28 percent.

that he was under the influence of alcohol. Although the doctor and the nurse had both reached the conclusion that the defendant was intoxicated, they said nothing to the police officers about the defendant's condition.

The police continued their investigation throughout the day of the accident. After reexamining the accident scene in daylight and viewing the marks and debris on the highway, the police began to revise their opinion as to which automobile had been driving the wrong way in the northbound lane. Later that day, an eyewitness told the police that he had seen the defendant's automobile being driven the wrong way in the northbound lane just before the accident.

Upon reevaluating all the available information, the two investigating police officers, during the early evening hours of September 17, proceeded to interview the defendant again. After they advised him of his Miranda rights, the defendant stated that he would answer their questions. He told the police officers the name of a restaurant where he had been before the accident. He professed having no memory of the accident or the events leading up to it. There was no mention of alcohol. The officers left.

At about 6:00 P.M. on September 17, the emergency room nurse was watching the six o'clock news on television. She saw the defendant and his wife being interviewed about the accident. The thrust of the interview was that the defendant had been an innocent victim of a drunken driver and that such drivers must not be permitted on the highways. The nurse, knowing of the defendant's condition as to sobriety shortly after the accident, became "irate." At about 7:10 P.M. on September 17, she received a telephone call from one of the investigating officers. The nurse was still angry about the interview that she had seen on television. She asked the officer if he had seen the program, and he responded affirmatively. She informed him (in what the judge found to be a breach of nursing ethics) that both she and the examining doctor believed that the defendant was intoxicated when originally examined. The officer asked her whether a blood test had been conducted. She responded affirmatively and also informed him of the alco-

hol blood level reading. The officer then told her that the investigation showed that it was the defendant who was driving the wrong way on Route 93.

On September 20, the investigating officers conferred with an assistant district attorney. They discussed the information then available including the information from a "private source" (the nurse) regarding the blood test results. It was decided that the police should issue a citation for "operating negligently so as to endanger" and "negligent homicide (misdemeanor)." They also considered issuing a citation for operating a motor vehicle while under the influence of intoxicating liquor. The assistant district attorney advised the police not to issue a citation for that offense at that time. She was concerned about the hearsay nature of the information concerning the results of the blood test. She decided to issue a summons for the hospital records of the defendant, ordering their production at the "show cause" hearing to be held on the other violations. That hearing was scheduled for October 13, 1982. Some time during the afternoon of September 20, citations for operating to endanger and negligent homicide (misdemeanor) were served on the defendant at his home. No notice, oral or written, was given at that time which, in any respect, suggested that the authorities were considering charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor or with vehicular homicide (felony). It was not until October 13, 1982, at the show cause hearing, that the police issued a citation to the defendant for those charges.

Where a defendant files a motion to dismiss a complaint or indictment on the ground that a citation was not issued at the time and place of the violation, it is the Commonwealth's burden "to establish that one of the exceptions in [G. L. c. 90C,] § 2, justified the prosecution of the defendant." *Commonwealth v. Mullins,* 367 Mass. 733, 734-735 (1975). *Commonwealth v. Provost,* 12 Mass. App. Ct. 479, 482 (1981). The judge ruled that the Commonwealth had not met its burden. He found that "the police had sufficient information [at least by the evening of September 17] to reconstruct the cause and course of the accident, including information that [the defendant] had

been drinking." The judge ruled that, "[a]lthough some delay in issuing [a citation to the defendant] was 'reasonably necessary' due to the initial misperception by police that the other driver was going the wrong way, the additional delay of twenty-three days after police cited [the defendant] for operating to endanger and negligent motor vehicle homicide on September 20 was not justified."

The Commonwealth contends that any delay in the issuance of the citation was justified because of the need of the police to obtain hospital records containing the result of the defendant's blood test. It relies on that portion of G. L. c. 90C, § 2, which excuses delay in the issuance of a citation if "additional time [is] reasonably necessary to determine the nature of the violation . . . ." The defendant argues that the investigation was over by that date because the police had sufficient information in their possession to issue a citation for the operating under the influence charge.

By September 20, the only evidence that the police had in regard to the defendant's intoxication at the time of the accident was information conveyed to them by the nurse. That information concerned the defendant's sobriety when he was examined at the hospital and also the results of his blood test. However, that information was contradicted, at least from the police officers' viewpoint, by their own observations that they had made of the defendant while he was at the hospital. They had seen and talked to the defendant in the emergency room and had not noticed any sign that he was under the influence of alcohol or even that he had been drinking liquor. The contradiction between the nurse's information and the police officers' observations warranted further investigation by the police.[4]

---

[4] We recognize that the police may use information gleaned from other persons in determining whether or not a citation should issue. See G. L. c. 90C, § 2, which specifically allows the issuance of a citation "whether or not the offense occurs within [the police officer's] presence." In this case, the information from the nurse was at odds with the police officers' own observations of the defendant. Therefore, the *worth* of the information conveyed to the police became an issue, at least from their viewpoint.

That investigation into the defendant's intoxication ended when the hospital records were examined on October 13.[5]

The cautious approach adopted by the police in this case is not inconsistent with the statute. It has been held that "[t]he statute must be read to permit police officers an opportunity to exercise reasoned and informed judgment in light of the particular circumstances in determining whether a violation has occurred. The statutory purposes would not be served by, in effect, requiring police officers to write citations first and to ask questions afterward . . . ." *Commonwealth* v. *Pappas,* 384 Mass. 428, 432-433 (1981). *Commonwealth* v. *Provost,* 12 Mass. App. Ct. 479, 484 (1981). Therefore, because "additional time was reasonably necessary to determine the nature of the violation" (G. L. c. 90C, § 2), the failure to issue the citation until October 13 was justified.[6] We reverse the judge's ruling that there was a violation of the statute. As we hold that the statute was not violated, we need not reach the question whether a defendant must show prejudice if a citation is not delivered in a timely manner. But see *Commonwealth* v. *Mullins,* 367 Mass. 733, 735 (1975).

2. *The judge's charge.* The defendant objected to the judge's instructions to the jury concerning the definition of operating a motor vehicle while under the influence of intoxicating liquor. A year after the charge in this case was given, the court in *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985), interpreted the phrase "while under the influence" as used in G. L. c. 90, § 24(1)(*a*). The court held that "in a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol

---

[5] There was testimony by a police officer that, when he served the summons on the hospital for the defendant's hospital records, the hospital refused to show him the records until October 13, the date set for the hearing.

[6] Further, the commendable action of the police in consulting with the assistant district attorney removed the possibility that there would be any manipulation or misuse of traffic citations. One of the purposes of G. L. c. 90C, § 2, is to prevent or eliminate such abuses. *Commonwealth* v. *Pappas,* 384 Mass. at 431. *Commonwealth* v. *Babb,* 389 Mass. 275, 283 (1983).

diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or erratic manner, but it must prove a diminished *capacity* to operate safely." (Emphasis in original.) *Id.* The judge's charge in this case, in light of the *Connolly* decision, was erroneous.[7] The *Connolly* decision applies to the charge here. See *Commonwealth* v. *Marley,* 396 Mass. 433, 437 (1985).

We reverse the judgment, set aside the verdict, and remand the case to the Superior Court for a new trial.

*So ordered.*

---

[7] In his instructions to the jury on the operating under the influence charge, the judge stated, in part, that, "Now, operating under the influence of alcohol means that the defendant was operating the vehicle while perceptibly affected by alcohol previously consumed. Perceptibly affected. That means, could one tell that he was — that he had consumed alcohol? Could one tell that by its effect on his outward appearance, condition of his breath, condition of his speech, condition of his body? . . . The question is whether he was perceptibly affected by the alcohol. Was he affected to any perceptible degree, any perceptible degree by the alcohol? 'Perceptible' means capable of being perceived, smelled, heard, seen, any of the senses." Language similar to the quoted language was held to be erroneous in *Commonwealth* v. *Connolly, supra* at 170. We repeat that the judge here did not have the benefit of the *Connolly* decision when he charged the jury in this case.