NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-104

COMMONWEALTH

vs.

WILLIAM A. ROGERS, THIRD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant, William Rogers, was convicted of operating a motor vehicle while under the influence of alcohol, see G. L. c. 90, § 24 (1) (a) (1).[1]  On appeal, he challenges the sufficiency of the evidence and the admissibility of statements of a percipient witness, and urges us to reverse his conviction based on an error in the prosecutor's closing argument.  We affirm.

1.  Sufficiency.  The defendant contends that the evidence was insufficient to show that he was operating under the influence of alcohol.  To prove that he was operating under the influence, "[t]he Commonwealth need not prove that the defendant

---

[1] Charges of operating with a revoked license as a habitual offender under G. L. c. 90, § 23, and of disguising to obstruct justice under G. L. c. 268, § 34, were dismissed.

actually drove in an unsafe or erratic manner, but it must prove a diminished capacity to operate safely."  Commonwealth v. Connolly, 394 Mass. 169, 173 (1985).

A McDonald's restaurant patron going through the drive-through discovered a running vehicle blocking the way.[2]  The driver approached the driver's side of the vehicle and saw the defendant, who was unresponsive, "slouched over" the steering wheel, and holding a cigarette that had burned down to the filter.  The driver called the police.  It took the driver's fiancée, a nurse, forty-five seconds to rouse the defendant and confirm he was awake.

The responding officer approached the driver's side of the vehicle.  He had to knock on the window twice and yell to get the defendant's attention.  The defendant was "slumped over at the neck, appeared to be sleeping" and had a McDonald's hamburger in his lap.  The officer noticed that the defendant had red, bloodshot, and glossy eyes, and slurred speech.  When the officer asked him if he knew where he was, the defendant responded, "Here."  When asked for a license, the defendant said he didn't have one.  The defendant also said that he had one beer earlier in the evening.

---

[2] It was parallel parked running across the exit from the drive-through.

The defendant agreed to complete roadside assessments, and after struggling to get out of the vehicle on his own, failed to complete all three assessments to the officer's satisfaction. The officer concluded that the defendant was impaired and placed him under arrest.

These facts are sufficient to show that the driver suffered from a diminished capacity to drive safely. See Connolly, 394 Mass. at 173. He was unable to stay awake, he was parked in a manner that blocked oncoming drivers and suggested he was unaware of the surroundings, he was difficult to rouse, he could not provide clear answers to simple questions, and, according to the officer on the scene, he was slurring his speech. See Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392-393 (2017). In addition, he was unable to complete the field assessments to the officer's satisfaction. Id. The verdict was supported by the evidence.

2. "Hearsay." On direct examination, the driver who attempted to assist the defendant testified that the defendant slurred his words. On cross-examination it emerged that the driver's fiancée was speaking with the defendant while the driver was on the telephone, and that the driver could not hear the words spoken but could hear that the defendant was mumbling. Although no objection was lodged at the time, the defendant now

3

argues that the reference to slurred speech was inadmissible hearsay.

The difficulty with this argument is that, at the time the testimony was heard on direct examination, it emerged as a proper answer to a proper question. The possibility that the speaker lacked first-hand knowledge, or may have repeated what he heard from his fiancée, materialized only on cross-examination. However, at this juncture there was no objection or motion to strike. See Commonwealth v. Grady, 474 Mass. 715, 720-721 (2016) (motion to strike required where question proper but answer was not). We therefore review for error, and if there was error, for a substantial risk of a miscarriage of justice.

We are not persuaded that the testimony on cross-examination fatally undermined the testimony on direct examination. The witness could hear the defendant's voice. Nor are we persuaded that the distinction between "slurred" and "mumbled" rises to the level of evidentiary error, or that if it did, such an error led to a substantial risk of a miscarriage of justice. The responding officer also testified that the defendant's speech was slurred. The evidence of the defendant's inert and unresponsive physical condition was compelling, and the evidence was otherwise strong.

4

3.  _Closing argument_.  When summarizing the evidence during closing argument, the prosecutor said, "I told you at the beginning of this trial that the case would be simple.  You would hear from two witnesses who will tell you -- who testified that the defendant was operating under the influence of alcohol on that evening."  While the prosecutor was permitted to argue in summation that the Commonwealth had proven that the defendant was operating under the influence, this statement was marginally in error for two reasons.  First, the testimony was that the defendant was impaired, not that he was driving under the influence.  For this reason, the prosecutor's summation did not accurately describe the evidence.  See Mass. G. Evid. § 1113 note, subsection (b)(2) (2022).  Cf _Commonwealth_ v. _Perez_, 444 Mass. 143, 150-151 (2005), and cases cited.  Second, any such testimony regarding the ultimate issue in the case would have been improper.  See _Commonwealth_ v. _Canty_, 466 Mass. 535, 544 (2013).  However, the jury were instructed to take their own recollection of the evidence, and that closing arguments were not evidence.  We presume that the jury followed those instructions.  _Id_. at 545.

Moreover, there was no objection to the summation, and for the reasons stated in _Canty_, 466 Mass. at 545, we discern no substantial risk of a miscarriage of justice.  The evidence was strong, and the prosecutor was entitled to argue that the

Commonwealth had proven that the defendant was operating under the influence of alcohol.  The prosecutor's error in attributing testimony to the witnesses, rather than making the same point in argument, was a misstep, but she was entitled to urge on the jury a finding of guilt.  We may attribute to the jury a measure of common sense and sophistication that would permit them to separate facts from overstatement.  See Commonwealth v. Silva, 455 Mass. 503, 515 (2009) ("The jury are assumed to possess sufficient sophistication in sorting out excessive claims").

Judgment affirmed.

By the Court (Sullivan,
  Shin & Hodgens, JJ.[3]),

Joseph F. Stanton

Clerk

Entered:  February 10, 2023.

---

[3] The panelists are listed in order of seniority.