### COMMONWEALTH vs. RAYMOND H. ORBEN, JR.

No. 00-P-399.

Middlesex. June 11, 2001. - February 1, 2002.

Present: BECK, CYPHER, & MASON, JJ.

*Intoxication. Motor Vehicle,* Operating under the influence. *Evidence,* Intoxication, Opinion, Guilty plea. *Constitutional Law,* Plea. *Due Process of Law,* Plea. *Practice, Criminal,* Plea, Prior conviction.

At the trial of an indictment charging operating a motor vehicle while under the influence of alcohol, lay opinion testimony from two witnesses regarding the defendant's sobriety was admissible, where the opinions were based on each witness's perception of the defendant. [703-704]

There was sufficient circumstantial evidence at the trial of an indictment charging operating a motor vehicle while under the influence of alcohol for a rational trier of fact to conclude that the defendant had operated a motor vehicle while under the influence of alcohol and that the alcohol had diminished his capacity to operate a motor vehicle safely. [704-705]

Proceedings at the disposition of an indictment charging that the defendant had operated a motor vehicle while under the influence of alcohol after having been convicted of the same offense three times previously did not meet even the minimum requirements for a guilty plea or its functional equivalent, or for a bench trial based on stipulated evidence; this court therefore remanded the matter for further proceedings. [706-707]

INDICTMENTS found and returned in the Superior Court Department on September 24, 1997.

The cases were tried before *Charles M. Grabau,* J.

*James Hammerschmith,* Committee for Public Counsel Services, for the defendant.

*Peter A. D'Angelo,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Raymond Orben, was indicted for operating a motor vehicle under the influence of alcohol, fourth offense (G. L. c. 90, § 24[1][a][1]); operating a motor vehicle while his license had either been suspended or revoked because

of operating a motor vehicle under the influence of alcohol (G. L. c. 90, § 23); and operating a motor vehicle after suspension or revocation, subsequent offense (G. L. c. 90, § 23).

A jury found the defendant guilty of operating under the influence of alcohol and of both charges of operating a motor vehicle with a suspended license. In a separate proceeding after the jury trial, the judge found that the conviction for operating with a suspended license was a subsequent offense and that the conviction for operating under the influence of alcohol was the defendant's fourth offense.

On appeal, the defendant claims that the improper admission of lay witness opinion evidence created a substantial risk of a miscarriage of justice, and also that there was insufficient evidence that he operated the motor vehicle while under the influence of alcohol. The defendant also argues that the conviction in regard to the fourth offense must be reversed because the judge did not conduct a colloquy when the defendant waived his right to a trial, or if the proceeding was a trial with stipulated evidence, reversal is warranted because the evidence was insufficient to demonstrate that he had been represented by counsel at the time of his previous convictions. No claim is made with regard to the convictions for operating after license suspension or with regard to the judge's finding that the conviction for operating with a suspended license was a subsequent offense.[1]

We affirm the conviction for operating a motor vehicle under the influence of alcohol, but vacate the conviction for the fourth offense and remand for further proceedings consistent with this opinion.

1. *Factual background.* A jury could have found the following facts. On August 28, 1997, at about 10:30 A.M., Katherine Orben, the defendant's wife, received a visit from her husband at work. He appeared happy and sober. At 11:00 A.M., Katherine's daughter from another relationship, Lisa Orben, who was married to the defendant's brother, received a telephone call from the defendant. The defendant yelled and swore at Lisa, telling her she was "in deep shit." According to Lisa, when the defendant drank he would "lash out" at her.

---

[1]The judge placed the conviction for operating with a suspended license, subsequent offense, on file.

Lisa testified that she was very familiar with the changes in his behavior when he was drinking and that on such occasions, he would say things that would hurt her. As a result of her conversation with him, Lisa was of the opinion that the defendant had been drinking.

At 11:20 A.M., the defendant telephoned Katherine at work. She noticed that his mood had changed since his visit. He was now angry and upset. Katherine became concerned that something was wrong.

At 12:10 P.M., Katherine discovered that her car, which she had driven to work that morning, was missing. She telephoned Lisa, and then the police. Sometime between 12:20 and 12:30 P.M., Lisa saw the defendant pull into the driveway of the two-family house the Orbens shared. He pulled in too fast and the car made a "boom" and bounced as it came to a stop. This did not seem normal to Lisa. The defendant took a step out of the car and picked up a bag from the lawn, and threw it into the back seat of the car. He pulled the car out of the driveway so fast that the tires dug up the lawn. He drove down the street, too fast for the neighborhood, although he seemed to be driving "fine."

At 12:51 P.M., Wakefield police Sergeant Pherson found Katherine's car parked on Main Street, a few miles away from the Orbens' home. Pherson saw the defendant leaving a nearby bank. The defendant had to steady himself on the wall of the bank in order to walk, and he swayed back and forth. When the defendant reached the car, he steadied himself by leaning and sliding along the side of the car to the driver's door. The defendant had difficulty getting into the car. Pherson watched as the defendant repeatedly stabbed the key at the ignition. Pherson approached the car and asked the defendant several times if he was okay. Eventually the defendant answered and Pherson noticed that the defendant's speech was slurred and incomprehensible. The defendant's eyes were bloodshot and he smelled strongly of alcohol. There was a half-empty pint of vodka on the front seat.

When Pherson asked the defendant for the keys, the defendant swore at him. The defendant required assistance in getting out of the car and screamed and struggled as he was taken into

custody. The defendant was too intoxicated to attempt field sobriety tests or to complete the booking process.

Through cross-examination and closing argument, the defense set forth the theory that the defendant had not been under the influence of alcohol at the time he operated the car, but rather that he became intoxicated after parking the car at the bank, and that Lisa Orben harbored malice toward him.

2. *Lay opinion testimony.* The defendant claims that the testimony of Katherine Orben, that she was "concerned that something was wrong," was improperly admitted because it was not based on firsthand knowledge but rather mere suspicion or instinct, and that it constituted improper opinion evidence of guilt.[2] The defendant further contends that the prosecutor compounded the alleged error in closing argument by emphasizing Katherine's state of mind in order to strengthen the inference that the defendant had been drinking.[3] Our review is limited to whether there was error, and if so, whether it created a substantial risk of a miscarriage of justice, because the defendant did not object to Katherine's testimony or to the relevant portions of the closing argument. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989).

The challenged testimony was based on Katherine's perception of the dramatic change in the defendant's mood between

---

[2]Katherine also testified that she did not drink, that she did not put the vodka bottle in the car, and that she did not permit vodka in her house.

[3]The prosecutor argued: "And by 11:20, when his wife gets a call from him, he's well on his way. Again, she describes him as very angry on the phone, that something — that she felt that something was terribly wrong. And he was arguing with her. She said, we had an argument on the phone, and there was something in his tone that made her worry. She's a loyal wife, ladies and gentlemen. She sat there on the stand, but she told you that she was worried. Worried enough that when she saw her car gone at 12:12, she called the police. She first hoped that the car would be at home. Why would it be at home? Because the only other person that has access to keys, ladies and gentlemen, is Raymond Orben, and she knows it. And she's hoping that he took the car home. Did she know what was coming down the pike? Did she know when she got that call at 11:20 what his condition was? Did she get very frightened when her car was missing at 12:12, and she suspected her husband had it? That's for you to decide, but I would ask you to consider the fact that she called the police at 12:12 with the suspicion that her husband was driving."

the time of his visit with her at 10:30 A.M. and her telephone conversation with him at 11:20 A.M. Katherine testified that she was concerned that something was wrong, and explained that she felt that way because the defendant was very angry.

Katherine's testimony regarding the defendant's demeanor was admissible. Her testimony that she was concerned something was wrong was based on her observation of his demeanor and, essentially, constituted lay opinion that the defendant was intoxicated. A lay person may provide an opinion, in a summary form, about another person's sobriety, provided there exists a basis for the opinion. See *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747, 750-751 (1981); *Commonwealth* v. *DiGeronimo*, 38 Mass. App. Ct. 714, 730 (1995). Katherine's testimony that she was concerned that something was wrong was therefore admissible.[4]

Similarly, Lisa's testimony that she believed that the defendant was intoxicated and that she had a "funny feeling" was admissible.[5] Here, Lisa testified to facts she perceived about the defendant, a person she knew well, through hearing the defendant speak. That Lisa could not see the defendant went to the weight and not the admissibility of the evidence. See *Commonwealth* v. *Tracy*, 349 Mass. 87, 95 (1965), cert. denied, 384 U.S. 1022 (1966); *Commonwealth* v. *Perez*, 411 Mass. 249, 262 (1991).

3. *Motion for required finding of not guilty.* The defendant concedes that the evidence was sufficient to find that he was intoxicated at 12:51 P.M. when the police found him leaning on the wall of the bank and struggling to get in and start the car, but that there was no evidence that the defendant was impaired by alcohol at the time he last operated the motor vehicle. Ac-

---

[4]Having concluded that there was no error in the admission of Katherine Orben's testimony, we need not reach the defendant's argument that the prosecutor's closing argument compounded the claimed error. In any case, in view of the strength of the evidence and the defendant's trial strategy, any excess in the prosecutor's argument on this point did not create a substantial risk of a miscarriage of justice.

[5]Furthermore, it appears from the record that defense counsel's failure to object was a function of a trial strategy to establish that Lisa had a motive to lie because of her difficult relationship with the defendant. Along those lines, defense counsel cross-examined Lisa about her failure to relate her perceptions to the police or the grand jury.

cording to the defendant, it is equally likely that he became intoxicated after parking the car, sometime after he left the driveway between 12:20 and 12:30 P.M. and before he was found leaving the bank by at 12:51 P.M.

The Commonwealth was required to prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely. *Commonwealth* v. *Connolly*, 394 Mass. 169, 173 (1985). The defendant's argument overlooks the evidence, viewed in the light most favorable to the Commonwealth, that would permit a jury to find that he had, in fact, operated the vehicle while his capacity to do so was diminished by alcohol.

First, the jury could have found that the defendant was under the influence of alcohol when he spoke with Lisa at 11:00 A.M. and Katherine at 11:20 A.M. Lisa testified that his behavior was consistent with his behavior when he was under the influence. Katherine testified that his demeanor had changed suddenly and dramatically. Second, Lisa's observations of the defendant's operation of the car while entering and leaving the driveway supported a conclusion that he was under the influence and that his capacity to operate the vehicle had been diminished. *Connolly, supra* at 173. *Commonwealth* v. *Marley*, 396 Mass. 433, 436-438 (1985). Third, although not conclusive, the half-empty vodka bottle found in the car, which Katherine had testified was not in the car when she drove to work that morning, supported the inference that the defendant had operated the car while under the influence of alcohol. Compare *Commonwealth* v. *Hilton*, 398 Mass. 63, 68 (1986) (only one empty bottle was found in the vicinity, suggesting that the defendant did not drink more than one bottle of beer after parking the car). Finally, the jury may have concluded that it was unlikely that the defendant became intoxicated in the twenty-minute period which had passed between his parking the car and his leaving the bank.

Taken together, there was sufficient circumstantial evidence for a rational trier of fact to conclude that the defendant had operated a motor vehicle while under the influence of alcohol, *Hilton, supra* at 66-67, and, considering Lisa's observation of his driving, that the alcohol had diminished his capacity to operate the vehicle. *Commonwealth* v. *Connolly*, 394 Mass. at 173.

4. *The subsequent offense.* Before trial began on the underlying offense, the defendant waived, in writing and in a proper colloquy, his right to a jury trial on the subsequent offense portion of the indictment. See G. L. c. 278, § 11A. When the time came for the bench trial, defense counsel advised the judge that the defendant also wished to waive the bench trial. Defense counsel stated that he had spoken with the five police officers who were assembled and waiting outside the courtroom to testify to the defendant's previous convictions, that he was convinced that the Commonwealth would be able to prove its case, and that it would not be necessary for the Commonwealth to call the witnesses.

Without conducting any sort of inquiry of the defendant, the judge accepted counsel's representation and asked the Commonwealth how it had intended to prove the three previous convictions. The Commonwealth summarized the expected testimony of the five officers and advised the judge that it was in possession of certified copies of the convictions. The judge then stated: "Based on the [compilation] that's being offered . . . I find beyond a reasonable doubt that the defendant is guilty." The parties then presented their sentencing arguments to the judge.

The defendant urges us to find that this is a defective guilty plea which he should be permitted to withdraw.[6] The Commonwealth counters that the proceeding was actually a bench trial with stipulated evidence.[7] The Commonwealth further claims that the defendant should not be permitted now to change his strategy on appeal after what was clearly a tactical decision by the defendant to forgo live testimony concerning the previous offenses.

The procedure followed did not meet even the minimum requirements for a guilty plea or its functional equivalent. Mass. R.Crim.P. 12, 378 Mass. 866 (1979). See *Commonwealth* v. *Chaplin,* 50 Mass. App. Ct. 365, 367 (2000) ("Counsel's

---

[6]The defendant did not file a motion to withdraw the purported plea or for a new trial.

[7]In which case, the defendant argues, the Commonwealth failed to establish that he was represented by counsel at the previous proceedings, and therefore retrial should not be permitted.

acquiescence that the defendant was a prior offender is not the functional equivalent of a guilty plea"). See generally Smith, Criminal Practice and Procedure §§ 1226, 1235, 1238 (2d ed. 1983). The procedure also did not meet the requirements of a trial based on stipulated evidence. See *Commonwealth* v. *Babcock*, 25 Mass. App. Ct. 688, 691-692 (1988) (when a defendant surrenders basic constitutional protections, the judge should engage in a probing exchange to determine whether the defendant understands what he is doing).

We conclude that the proceeding was neither a trial nor a plea, but something similar, although not identical, to the procedure repudiated in *Commonwealth* v. *Zuzick*, 45 Mass. App. Ct. 71, 74-75 (1998).[8] See Smith, Criminal Practice and Procedure § 1648 n.5 (Supp. 2001). Accordingly, we vacate that portion of the judgment that states that the defendant was found guilty of having committed a fourth offense of operating under the influence of alcohol and remand the matter to the Superior Court for further proceedings on the indictment charging the defendant with a subsequent offense of operating a motor vehicle while under the influence of alcohol. *Zuzick, supra* at 75. *Commonwealth* v. *Chaplin, supra* at 368. *Commonwealth* v. *McCready*, 50 Mass. App. Ct. 521, 525 (2000). The conviction of the underlying offense is affirmed.

*So ordered.*

---

[8]The proceedings in this case occurred before the publication of *Zuzick.*