NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-833                                          Appeals Court

COMMONWEALTH  vs.  HOLDENS J. ROBERSON.

No. 22-P-833.

Plymouth.     November 2, 2023. - March 7, 2024.

Present:  Sacks, Brennan, & D'Angelo, JJ.

Motor Vehicle, Operating under the influence.  Alcoholic
    Liquors, Motor vehicle.  Evidence, Admissions and
    confessions, Videotape.  Practice, Criminal, Assistance of
    counsel, Waiver of trial by jury.

Complaint received and sworn to in the Brockton Division of
the District Court Department on July 7, 2020.

The case was heard by Daniel J. Hourihan, J.

Owen Murphy for the defendant.
Arne Hantson, Assistant District Attorney, for the
Commonwealth.

D'ANGELO, J.  At the defendant's jury-waived trial on the

charge of operating a motor vehicle while under the influence of

alcohol, the Commonwealth relied in part on a video recording of

the defendant's booking process while at the police station

(booking video).[1]  The booking video captured police officers continuing to ask the defendant questions after the defendant had invoked his right to counsel.  The defendant claims that his trial counsel was ineffective for failing to move to suppress the booking video, and that the Commonwealth presented insufficient evidence regarding the defendant's intoxication at the time of operation.  In addition, the defendant asserts that his waiver of a jury trial was not a knowing one.  Discerning no error of law or abuse of discretion in the admission of the evidence, and concluding that the defendant knowingly waived his right to a jury trial and that the evidence of intoxication at the time of operation was sufficient, we affirm.

Background.  We summarize the trial facts, as the judge could have found them, viewing the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  Because the defendant challenges only the sufficiency of the evidence of intoxication at the time of operation, we focus on that element.  See G. L. c. 90, § 24 (1) (a) (1).

On July 7, 2020, at around 1 A.M., West Bridgewater police Officer Gerard Julien-Suarez was dispatched to an area near the intersection of Route 24 and Route 106.  The officer located a

---

[1] The defendant was found not guilty of disorderly conduct.

Cadillac at a Shell gasoline station with the engine running, headlights on, and the car in park. The defendant was seated in the driver's seat and was the only person in the car. The officer informed the defendant that he had received reports of a car being parked in the middle of the highway and wanted to check on the well-being of the driver.

The defendant responded by asking, "Why are you pulling me over?" The officer stated, "I'm not pulling you over, I'm just here to check your well-being." The defendant began to accuse the officer of racial profiling, stating that he had been stopped because he was Black and driving a Cadillac.

During this exchange, the officer detected a moderate odor of alcohol coming from the defendant, that his eyes were bloodshot, and that the defendant spoke with a "[t]hick-tongued, slurred, loud, argumentative" speech pattern. The defendant continued to be loud and argumentative and refused to answer the officer's questions while flailing his arms. While the officer was standing next to the defendant's window, the defendant retrieved his cellular telephone from between his legs and made a telephone call. Officer Julien-Suarez asked the defendant to get out of the car, but the defendant refused and continued to speak on his cell phone. After another request and another refusal, the officer opened the door and the defendant agreed to step out of the car.

Once outside, the defendant continued to be "argumentative, uncooperative, refused to answer any questions," and used profanities while continuing to accuse the officer of racial profiling. The defendant was handcuffed and placed in the back of the police cruiser where he kicked and spit at the plexiglass barrier. A few minutes after the defendant was placed in the cruiser, his wife appeared at the scene. The defendant continued to be uncooperative. Based on all of his observations of the defendant, the police officer formed the opinion that the defendant was drunk. The defendant was then placed under arrest and transported to the police station.

The booking video of the defendant at the police station was admitted in evidence. The defendant continued to be uncooperative and refused to answer questions while at the police station. The booking video showed the defendant being brought into a holding cell, at which time he can be seen and heard demanding, multiple times, to speak to a lawyer. After about fifteen minutes, the defendant was brought back into the booking room and provided his Miranda rights. When asked if he understood his rights, the defendant gave a "thumbs up" hand signal. The police resumed questioning the defendant and asked biographical questions. The police also asked the defendant if he had consumed any alcohol. The defendant again responded with a "thumbs up" signal.

The trial judge found the defendant guilty of operating a motor vehicle while under the influence of alcohol. The judge, in announcing his finding, stated,

> "And I must say that the video was overwhelming. The video shows -- the officer tells me that he smelled alcohol, that the man['s] speech was slurred, and that he had -- that his eyes were glassy. But the video is overwhelming, he looks very drunk in the video. . . . Right at the end of the video before they put him in his cell, he pirouetted backwards and bopped into the wall when he wasn't handcuffed to the bar. . . . And I believe that his ability to operate was impaired by alcohol from what I saw in the video and the officer's observations."

Discussion. 1. Ineffective assistance of counsel for failing to file a motion to suppress. The defendant alleges that his trial counsel was ineffective for failing to file a motion to suppress the booking video which contained evidence of his nonverbal admission to drinking alcohol after he had invoked his right to counsel. Where an ineffective assistance of counsel claim involves counsel's failure to file a motion to suppress, "the defendant must demonstrate that the evidence would have been suppressed if properly challenged." Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011). The defendant also must show that there was a reasonable probability that the verdict would have been different without the excludable evidence, see Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), or at least that it "might have accomplished something

material for the defense" (citation omitted).  Commonwealth v. Lally, 473 Mass. 693, 703 (2016).

The right to counsel must be "scrupulously honored." Commonwealth v. Thomas, 469 Mass. 531, 541 (2014), quoting Michigan v. Mosley, 423 U.S. 96, 103-104 (1975).  Once a defendant invokes the right to counsel, all questioning must cease.  See Edwards v. Arizona, 451 U.S. 477, 484 (1981). Questioning may not resume until an attorney is obtained for the suspect and is present, or the suspect initiates "further communication, exchanges, or conversations with the police." Thomas, supra at 539, quoting Edwards, supra at 484-485.  If a defendant reinitiates communication, the Commonwealth must establish beyond a reasonable doubt that the police did not initiate the discussion that led to the defendant rescinding the invocation of the right to counsel.  See Commonwealth v. Hoyt, 461 Mass. 143, 151 (2011).  Once invoked, a reviewing court indulges "in every reasonable presumption against" a defendant's waiver of these constitutional rights.  Commonwealth v. Anderson, 448 Mass. 548, 554 (2007), quoting Commonwealth v. Torres, 442 Mass. 554, 571 (2004).

Even after the invocation of counsel, "[t]he police may ask routine booking questions, but not about the crime that is under investigation."  Commonwealth v. Chadwick, 40 Mass. App. Ct. 425, 427 (1996).  In the context of alleged violations of

Miranda v. Arizona, 384 U.S. 436 (1966), we have held that routine biographical questions such as those about name, age, or address, asked during a defendant's booking, are not interrogation within the meaning of Miranda.  See Commonwealth v. Kacavich, 28 Mass. App. Ct. 941, 941-942 (1990).  However, "[a]lthough a booking officer proceeding down a litany of routine questions may have no investigatory purpose in asking [certain questions], the content of that person's response may be incriminating." Commonwealth v. Woods, 419 Mass. 366, 373 (1995).  The key inquiry is whether questions posed during booking "are designed to elicit incriminatory admissions," or have that potential.  Id.

Here, the question about drinking, after the defendant had been arrested for operating a motor vehicle while under the influence of alcohol, had direct investigatory relevance, regardless of whether the question is typically asked as part of the routine booking process.  See Commonwealth v. Acosta, 416 Mass. 279, 283 (1993).  Therefore, it was a question that the officer should have known was "reasonably likely to elicit an incriminating response." Commonwealth v. Rubio, 27 Mass. App. Ct. 506, 512 (1989), quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980).  And because the defendant had previously and repeatedly requested an attorney, there was fertile ground for a motion to suppress evidence of his nonverbal admission.

We need not determine whether the defendant has demonstrated that such a motion would have been successful, however, because in the context of the strong evidence of intoxication in this case, the defendant's admission of drinking had little to no impact on the judge's finding. We therefore conclude that trial counsel's failure to file a motion to suppress did not prejudice the defendant and, therefore, did not amount to ineffective assistance.

The defendant also argues that because a motion to suppress statements would have been allowed, the entire booking video also should have been suppressed as a fruit of the poisonous tree. Evidence derived from an illegally obtained statement is presumptively inadmissible. See Commonwealth v. Martin, 444 Mass. 213, 215 (2005). The prosecution can overcome this presumption, however,

> "by showing that either: (1) after the illegally obtained statement, there was a break in the stream of events that sufficiently insulated the post-Miranda statement from the tainted one; or (2) the illegally obtained statement did not incriminate the defendant, or, as it is more colloquially put, the cat was not out of the bag."

Commonwealth v. Rosa-Roman, 485 Mass. 617, 629 (2020), quoting Commonwealth v. Tremblay, 480 Mass. 645, 658 n.9 (2018).

In this case, there is no evidence that anything in the booking video, other than the defendant's response to the question about drinking, was derived from or resulted from the

violation of the defendant's invocation of his right to an attorney. The defendant's nonverbal affirmation of his having been drinking had no impact on his other behavior that is depicted on the video footage. Additionally, because the improper question was detectable only in the audio track of the video footage, the booking video could have been introduced without sound. This would still have allowed the trial judge to evaluate the defendant's appearance and balance at the police station without hearing the officer's question about drinking. See Commonwealth v. Price, 408 Mass. 668, 669 (1990). There was no error in the admission of the booking video even though the defendant's nonverbal affirmation to drinking should have been suppressed had defense counsel so moved.

2. Sufficiency of the evidence. The defendant argues that the Commonwealth's evidence of intoxication at the time of operation was insufficient. He maintains that the judge's comments at the time of the guilty finding about the defendant's intoxication at the police station indicate that the judge was unconvinced of the defendant's intoxication when he was found sitting in his car with the engine running. It is plain, however, that the judge's brief remarks were "not intended as a comprehensive statement of all the facts he found or of all his legal rulings." Commonwealth v. Carter, 481 Mass. 352, 361 (2019), cert. denied, 140 S. Ct. 910 (2020). Moreover,

"[j]udges in jury-waived trials are presumed to know and correctly apply the law." Commonwealth v. Healy, 452 Mass. 510, 514 (2008), quoting Commonwealth v. Watkins, 63 Mass. App. Ct. 69, 75 (2005). The judge's statements here do not indicate that he was unconvinced of the defendant's intoxication at the scene.

The Commonwealth provided ample evidence that allowed a rational trier of fact to find that the defendant's ability to operate a motor vehicle was impaired by his consumption of alcohol. See Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 506-507 (2011) ("slurred speech, belligerent demeanor, strong odor of alcohol, poor balance, and glassy, bloodshot eyes" were "ample evidence" of intoxication). See also Commonwealth v. Orben, 53 Mass. App. Ct. 700, 702-703 (2002) (conviction of operating under influence of alcohol affirmed where defendant displayed issues with balance, bloodshot eyes, slurred speech, odor of alcohol, and performance on field sobriety tests that showed inability to follow instructions). Separate and apart from the booking video, the officer's observations at the scene of the defendant's appearance, smell, and actions, along with the officer's opinion that the defendant was drunk, were sufficient for a rational trier of fact to find that the defendant was under the influence of alcohol at the time of operation. See id.

3.  Admissibility of the booking video.  The defendant is correct that parts of the audio portion of the booking video, although not objected to, were not admissible.  See supra.  Specifically, the defendant's assertion of his various rights, the defendant's declining to take breath and blood tests, and hearsay statements attributed to the defendant's wife all should not have been admitted if an objection was lodged.  However, the judge, in ruling on the admissibility of the entire booking video, stated:

> "Right, I'm not going to consider anything that -- some out-of-court statements.  My focus on the video is . . . how his condition is at the time of the booking, his clarity or lack of.  His sobriety, basically is what I'm looking for, and the way he answers questions and things like that, that are cues to me to his condition at the time of the incident."

We assume that the judge properly followed his own limitations on the booking video and correctly applied the law.  See Healy, 452 Mass. at 514.  There is nothing in the record, including the judge's statements, to indicate that the judge relied on any improper evidence from the booking video.  Thus, the admission of that evidence, even if error, created no substantial risk of a miscarriage of justice.

4.  Jury waiver colloquy.  The defendant submits that his jury waiver was not knowing and intelligent because the colloquy did not allow the judge to find that the defendant himself had decided to waive his right to a jury trial.

The defendant acknowledged to the judge that he had signed the jury waiver form.  The judge then questioned the defendant regarding his education level, mental health status, and whether he was under the influence of any drugs or alcohol.  The judge explained to the defendant that he had a right to a jury trial, could assist in selecting the jurors, that those jurors would hear all the facts and evidence, and that he as the judge would explain the law to them.  The defendant acknowledged the jurors' functions.  The judge then informed the defendant that the jurors would have to reach a unanimous verdict of guilty or not guilty, and the defendant stated that he understood.  The judge explained that by choosing a trial with a judge he was waiving his right to a jury trial.  The defendant stated that he understood.  Finally, the judge asked the defendant if he had enough time to discuss his decision to waive the right to a jury with his attorney, and the defendant said that he had and he was satisfied with his attorney's advice.  The judge specifically found that the defendant's waiver was a knowing and voluntary one.

A jury waiver colloquy is designed to ensure that any waiver by the defendant is made "voluntarily and intelligently." Ciummei v. Commonwealth, 378 Mass. 504, 509 (1979).  "So long as a colloquy occurs the sole focus [on appeal] is whether the colloquy has provided an evidentiary record upon which the trial

judge could find the waiver of a defendant was voluntary and intelligent." Commonwealth v. Hardy, 427 Mass. 379, 381 (1998), quoting Commonwealth v. Pavao, 423 Mass. 798, 802 (1996).

There is no support in the record for the defendant's contention that defense counsel dictated the path for the defendant to take.  Nor did the defendant file a motion for a new trial before his direct appeal, and thus he did not submit an affidavit or present any other evidence to support his claim. See Commonwealth v. Diaz, 448 Mass. 286, 289 (2007).  The defendant signed a written jury waiver form and acknowledged he did so on the record.  Finally, the defendant stated that he understood he was pursuing a trial with a judge and not a jury, and that no one threatened him to give up his right to a jury. The colloquy was adequate for the judge to find that the defendant's jury waiver was knowing, voluntary, and intelligent. See Commonwealth v. Backus, 78 Mass. App. Ct. 625, 630 (2011).[2]

Judgment affirmed.

---

[2] We see no merit in the defendant's remaining argument, that hearsay evidence of his wife's statements at the gasoline station was improperly admitted and created a substantial risk of a miscarriage of justice.  Contrary to the defendant's claim, the arresting officer's testimony did not repeat any statement supposedly made to the defendant by his wife.  To the extent that any of the wife's hearsay statements were repeated in the booking video, the judge made clear that he would not consider them.  See supra.